UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

PAUL A. INGLESE, an individual,

    Plaintiff,

v.                                                                   Case No.

BLACK SWAN TECHNOLOGIES, LLC,

    Defendant.

## VERIFIED COMPLAINT

Plaintiff, Paul A. Inglese ("Plaintiff" or "Inglese"), by and through his undersigned counsel, sues Defendant, Black Swan Technologies, LLC ("Defendant" or "Black Swan Technologies"), and in support thereof states the following:

## JURISDICTION, VENUE, AND PARTIES

1.    Inglese is an individual residing in Collier County, Florida, which is within the judicial district of this Court.

2.    Black Swan Technologies is an administratively dissolved Florida limited liability company with its last principal place of business located at 3506 Mercantile Avenue, Naples, Florida 34014, which is within the judicial district of this Court.

3.     This Court is vested with subject matter jurisdiction pursuant to 28 U.S.C. § 1331, and 28 U.S.C. § 2201.

4.     Venue in this district is proper pursuant to 28 U.S.C. §1391 as Black Swan Technologies last resided within the judicial district and a substantial portion of the events giving rise to Inglese's claim occurred within this judicial district.

## FACTS

### Paul Inglese invented specific intellectual property

5.     Prior to Black Swan Technologies' formation, Inglese had worked in the construction industry for several decades using Fiber Reinforced Polymer ("FRP") technologies.

6.     Based upon Inglese's years of experience using Fiber Reinforced Polymer ("FRP") technologies to manufacture construction materials for homes and businesses, he created new advanced building construction components using FRP technology which could be used to construct advanced building systems (the "Intellectual Property").

7.     Before Black Swan Technologies was formed, Inglese had already finished developing his fifth version of the Intellectual Property, which he called "Gen 5 Technology".

8.     Before Black Swan Technologies was formed, Inglese had already finished developing his sixth version of the Intellectual Property, which he called "Gen 6 Technology."

9.     Inglese finished developing his Gen 5 and Gen 6 Technologies while he was working with Tellus Building Systems, LLC.

10.    Inglese worked with Tellus Building Systems, LLC, years before Black Swan Technologies was formed.

11.    On August 20, 2018, Inglese filed his First Provisional Patent Application, Application #62/719,885, titled "Embed Connector for Thin-Shell Wall Panel and Wall Panel" (the "First Provisional Application").

12.    The First Provisional Application reflected Inglese's Gen 5 Technology.

13.    Inglese has always been the exclusive author, owner, inventor, creator, and designer of the First Provisional Application.

14.    Black Swan Technologies never owned any title, right, or interest to the First Provisional Application or to any of the intellectual property used or created which formed the First Provisional Application.

15.    Inglese's "Gen 6" Technology differed from his "Gen 5" Technology because Gen 5 was an FRP Embed Connector used with a metal stud with a

concrete precast cladding, and Gen 6 was used as a fully composite wall panel system.

16.     Inglese's Gen 5 Technology was a wall panel system using an FRP Embed connector mounting a metal stud to a concrete cladding panel, whereas Inglese's Gen 6 Technology was a fully composite wall panel assembly that could be used without using concrete or metal studs.

17.     In order to monetize his Gen 6 Technology, Inglese envisioned the creation of three separate companies: Black Swan Technologies, Rhino Acquisitions, LLC ("Rhino Acquisitions"), and Galexa, Inc. ("Galexa")

18.     The idea was:

   a. Inglese would assign his Gen 6 Technology to Black Swan Technologies, in exchange for shares in Black Swan Technologies;

   b. Black Swan Technologies would then issue a master license to Rhino Acquisitions;

   c. Rhino Acquisitions would then act as a parent licensing company, and license the Gen 6 Technology to manufacturers, including but not limited to, Galexa, in exchange for shares in Rhino Acquisitions;

   d. The manufacturers, including but not limited to, Galexa, would then use the Gen 6 Technology to manufacture the Gen 6 wall panel

assembly in exchange for shares in Galexa, and then provide those assembly materials to suppliers and contractors.

### Black Swan Technologies' Formation

19.    In furtherance of Inglese's vision, on March 11, 2019, Black Swan Technologies was formed.

20.    The original Members of Black Swan Technologies were Charles Ardezzone ("Ardezzone")(42.5% Equity), David Tingley ("Tingley")(15% Equity), and Paul Inglese ("Inglese")(42.5% Equity).

21.    Tingley was responsible for putting together Black Swan Technologies' books and records.

22.    Tingley failed to complete, formalize, or initiate any of the company books or records needed for Black Swan Technologies.

23.    For example, there was never an operating agreement, membership agreement, shareholder agreement, voting rights agreement, bylaws, or any other corporate document drafted and either signed or filed for, by, or on behalf of, Black Swan Technologies, with the exception of the original Articles of Incorporation for Black Swan Technologies filed with the State of Florida.

24.    In an effort to keep the corporate structure of each of the three companies substantially similar, Ardezzone agreed to be the Chief Executive Officer ("CEO") of Black Swan Technologies.

## The Intellectual Property Assignment Agreement

25.    In furtherance of Inglese's vision, on August 5, 2019, Black Swan Technologies, Inglese, and Tellus entered into an Intellectual Property Assignment Agreement (the "August 5, 2019 Intellectual Property Assignment Agreement").

26.    A true and accurate copy of the August 5, 2019 Intellectual Property Assignment Agreement is attached hereto and incorporated herein as **Exhibit "1"**.

27.    According to the August 5, 2019 Intellectual Property Assignment Agreement, Inglese was supposed to assign his Intellectual Property to Black Swan Technologies.

28.    Contrary to the August 5, 2019 Intellectual Property Assignment Agreement, Inglese never assigned any of his Intellectual Property to Black Swan Technologies.

29.    The First Provisional Application, for Inglese's Gen 5 Technology, expired in August of 2019.

30.    Black Swan Technologies and Inglese allowed the First Provisional Application to expire.

31.    Black Swan Technologies failed to renew the First Provisional Application.

32.    Inglese never assigned the First Provisional Application to Black Swan Technologies.

33.    Black Swan Technologies never enforced the August 5, 2019 Intellectual Property Assignment Agreement against Inglese because Tingley and Ardezzone were incompetent and consistently failed to adequately manage and operate Black Swan Technologies.

**The September 25, 2019 Secured Convertible Promissory Note**

34.    On August 12, 2019, Inglese filed his Second Provisional Patent Application, Application #62/855,707, titled "Structural Building Systems" (the "Second Provisional Application").

35.    Black Swan Technologies never owned any title, right, or interest to the Second Provisional Application or to any of the intellectual property used or created which formed the Second Provisional Application.

36.    Inglese never assigned or transferred the Second Provisional Application to Black Swan Technologies.

37.    Inglese was and has always been the sole and exclusive owner, author, holder, creator, inventor, and designer of the Second Provisional Application.

38.     On September 24, 2019, Tingley, the Chief Financial Officer of Galexa, Inc. ("Galexa"), convinced Michael Christoff ("Christoff"), one of Galexa's officers and principal investors, to invest $100,000.00 more into Galexa.

39.     Galexa actually needed the money because Tingley and Ardezzone were misappropriating and embezzling funds from Galexa and using them to fund their own personal expenses.

40.     In furtherance of this $100,000.00 investment, Tingley promised Christoff that the $100,000.00 investment would be secured using Inglese's Gen 6 Technology as collateral.

41.     On September 25, 2019, Galexa, Inc., and Michael Christoff ("Christoff") entered into a Secured Convertible Promissory Note (the "September 25, 2019 Secured Convertible Promissory Note").

42.     A true and accurate copy of the September 25, 2019 Secured Convertible Promissory Note is attached hereto and incorporated herein as **Exhibit "2"**.

43.     Pursuant to the September 25, 2019 Secured Convertible Promissory Note, Christoff gave Galexa an additional $100,000.00 loan, and Galexa promised to repay Christoff's $100,000.00 loan by executing the September 25, 2019 Secured Convertible Promissory Note with him.

44.     According to the September 25, 2019 Secured Convertible Promissory Note, Black Swan, LLC, was a party to the September 25, 2019 Secured Convertible Promissory Note.

45.     Black Swan, LLC does not exist.

46.     Black Swan, LLC has never existed.

47.     "Black Swan" is not, and has never been, an owned fictious name in the State of Florida.

48.     Black Swan Technologies has never trademarked the "Black Swan" name.

49.     Galexa has never trademarked the "Black Swan" name.

50.     Black Swan Technologies has never signed a contract as Black Swan, LLC.

51.     Black Swan Technologies has never transacted or performed business as Black Swan, LLC.

52.     Black Swan Technologies, LLC, is not, and has never been, Black Swan, LLC.

53.     Part of page four of the September 25, 2019 Secured Convertible Promissory Note states as follows, "[t]his Secured Convertible Promissory Note and Maker's obligations hereunder are collateralized by pledge of the Intellectual

Property owned or to be acquired by Black Swan, LLC, a Florida limited liability company, an affiliate of the Maker ("Intellectual Property") . . . ."

54.    One of the primary points of Inglese's vision for structuring the companies, including Black Swan Technologies and Galexa, separately was to avoid the companies being misclassified as related entities or affiliates to limit potential liabilities.

55.    According to the September 25, 2019 Secured Convertible Promissory Note, Black Swan, LLC, signed the September 25, 2019 Secured Convertible Promissory Note.

56.    David Tingley signed the September 25, 2019 Secured Convertible Promissory Note as Black Swan, LLC's CFO, and as Galexa's CFO.

57.    David Tingley has never been an officer of Black Swan, LLC, because Black Swan, LLC, does not exist.

58.    David Tingley has never been the CFO of Black Swan, LLC, because Black Swan, LLC, does not exist.

59.    Black Swan Technologies did not sign and was not a party to the September 25, 2019 Secured Convertible Promissory Note.

60.    When David Tingley signed the September 25, 2019 Secured Convertible Promissory Note, Paul Inglese had not transferred or assigned any of

his Intellectual Property to Black Swan, LLC, because Black Swan, LLC does not exist.

61.     When David Tingley signed the September 25, 2019 Secured Convertible Promissory Note, Paul Inglese had not transferred or assigned any of his Intellectual Property to Black Swan Technologies, LLC, contrary to the terms of the Intellectual Property Assignment Agreement.

62.     As of September 25, 2019, neither Black Swan, LLC, nor Black Swan Technologies, LLC, owned or had acquired any intellectual property which they could pledge to Christoff.

63.     Neither Black Swan, LLC, nor Black Swan Technologies, LLC, ever acquired any rights, title, interest, or ownership in or to any of Inglese's Intellectual Property.

### The September 25, 2019 Pledge and Security Agreement

64.     According to the September 25, 2019 Secured Convertible Promissory Note, the security or collateral for the September 25, 2019 Secured Convertible Note was memorialized by a Pledge and Security Agreement (the "September 25, 2019 Pledge and Security Agreement").

65.     A true and accurate copy of the September 25, 2019 Pledge and Security Agreement is attached hereto and incorporated herein as **Exhibit "3".**

66.    The September 25, 2019 Pledge and Security Agreement stated, "Pledgor [Black Swan, LLC] hereby pledges, transfers, assigns, and grants to Creditor [Capital Funding, LLC] a security interest in and to all of the intellectual property currently owned or to be acquired by the Pledgor, including the Test Certificates for the Florida Product Approval of Galexa's Advanced Building System Walls ("Collateral") . . . ."

67.    Black Swan, LLC never obtained or acquired any of Inglese's Intellectual Property, including either the Gen 5 or Gen 6 Technologies, because Black Swan, LLC doesn't exist.

68.    Inglese never assigned, transferred, or pledged any of his Intellectual Property to Black Swan, LLC, including either the Gen 5 or Gen 6 Technologies.

69.    Inglese never assigned, transferred, or pledged any of his Intellectual Property to Black Swan Technologies, including either the Gen 5 or Gen 6 Technologies.

70.    Black Swan, LLC, did not receive anything in consideration for or in exchange for signing the September 25, 2019 Pledge and Security Agreement.

71.    Black Swan Technologies did not receive anything in consideration for or in exchange for the September 25, 2019 Pledge and Security Agreement.

72.     Neither Galexa nor Christoff gave Black Swan, LLC anything of value for signing the September 25, 2019 Pledge and Security Agreement.

73.     Neither Galexa nor Christoff gave Black Swan Technologies anything of value for signing the September 25, 2019 Pledge and Security Agreement.

74.     The September 25, 2019 Secured Convertible Promissory Note was fraudulent and unauthorized.

75.     The September 25, 2019 Pledge and Security Agreement was fraudulent and unauthorized.

76.     In May of 2020, disheartened by Ardezzone's incompetence, Tingley's and Christoff's repeated attempts to steal his intellectual property, and the numerous attempts made by Christoff to intimidate and harass Galexa's shareholders, Inglese decided to extricate himself from Galexa and to a large extent, Black Swan Technologies.

77.     On May 17, 2020, Inglese, Black Swan Technologies, Galexa, and Rhino Acquisitions signed the Termination of Intellectual Property Assignment Agreement (the "May 17, 2020 Termination of Intellectual Property Assignment Agreement").

78.     A true and accurate copy of the May 17, 2020 Termination of Intellectual Property Assignment Agreement is attached hereto and incorporated herein as **Exhibit "4".**

79.     By signing the May 17, 2020 Termination of Intellectual Property Assignment Agreement, Galexa and Black Swan Technologies were returning or reassigning any intellectual property or intellectual property rights they owned or held back to Inglese, including but not limited to, Black Swan Technologies' contractual right to force Inglese to assign his Intellectual Property to Black Swan Technologies.

80.     In exchange for signing the May 17, 2020 Termination of Intellectual Property Assignment Agreement, Inglese returned his 23.75% ownership of Galexa, valued at over half a million dollars, to Galexa's and Black Swan Technologies' CEO, Ardezzone.

81.     The September 25, 2019 Secured Convertible Promissory Note and the September 25, 2019 Pledge and Security Agreement were prepared and signed with the intent to unlawfully take control of Inglese's Intellectual Property.

82.     Black Swan Technologies reported the September 25, 2019 Secured Convertible Promissory Note and the September 25, 2019 Pledge and Security Agreement to the Collier County Sheriff's Office for criminal prosecution.

83.     On July 28, 2020, Michael Christoff, as part of a derivative action on behalf of Galexa, sued Inglese and Northstar Technologies Group, Inc., in the United States District Court for the Middle District of Florida (the "Christoff Lawsuit").

84.     As part of the Christoff Lawsuit, Galexa argued that it owns all of Inglese's Intellectual Property.

85.     Galexa argues that it owns Inglese's Intellectual Property because:

   a.   The September 25, 2019 Secured Convertible Note is a valid and enforceable contract;

   b.   The September 25, 2019 Pledge and Security Agreement is a valid and enforceable contract; and

   c.   The May 17, 2020 Termination of Intellectual Property Assignment Agreement is unenforceable.

86.     However:

   a.   The September 25, 2019 Secured Convertible Note is unenforceable;

   b.   The September 25, 2019 Pledge and Security Agreement is unenforceable;

   c.   Neither Black Swan, LLC, Capital Funding, LLC, Christoff, Black Swan Technologies, LLC, nor Galexa have ever owned or acquired any of Inglese's Intellectual Property because Inglese never actually

assigned, transferred, or pledged any of his Intellectual Property to any of them; and

d. The May 17, 2020 Termination of Intellectual Property Assignment Agreement is a valid and enforceable agreement.

## COUNT ONE- DECLARATORY JUDGMENT

87.     The allegations described in paragraphs 1 through 86(d), above, are hereby reincorporated and realleged herein.

88.     This count sets forth a derivative action against Black Swan Technologies for declaratory relief pursuant to 28 U.S.C. §2201.

89.     Black Swan Technologies is never mentioned within the September 25, 2019 Secured Convertible Note.

90.     Black Swan Technologies did not sign the September 25, 2019 Secured Convertible Promissory Note.

91.     Black Swan Technologies is not a party to the September 25, 2019 Secured Convertible Note.

92.     Even if Black Swan Technologies is a party to the September 25, 2019 Secured Convertible Note, the September 25, 2019 Secured Convertible Note is unenforceable because Black Swan Technologies did not receive any consideration or bargained for exchange in exchange for signing the agreement and encumbering a potential asset.

93.     Even if Black Swan Technologies is a party to the September 25, 2019 Secured Convertible Note, the September 25, 2019 Secured Convertible Note is void against public policy because David Tingley breached his fiduciary duty to Black Swan Technologies when he encumbered a potential asset of Black Swan Technologies' without receiving anything in return. He did this so his other company, Galexa, which he was also CFO of, could profit and that he could continue to embezzle from Galexa undetected.

94.     Even if Black Swan Technologies is a party to the September 25, 2019 Secured Convertible Note, the September 25, 2019 Secured Convertible Note is void against public policy because it is fraudulent and illegal.

95.     The parties are in doubt or are uncertain as to the validity and enforceability of the September 25, 2019 Secured Convertible Note.

96.     Inglese, on the one hand, and Black Swan Technologies, on the other hand, have, or reasonably may have, a bona fide, actual, present, practical need for the declaration and they have an adverse and antagonistic interest in the outcome of the declaration, in fact and/or in law.

97.     The declaratory relief sought is not merely the giving of abstract legal advice by the Court or the answer to questions propounded from curiosity.

WHEREFORE, Plaintiff, PAUL INGLESE, prays for declaratory judgment against Defendant, BLACK SWAN TECHNOLOGIES, LLC, ruling that:

A. This Court has jurisdiction over the parties and the subject matter of this action;

B. The September 25, 2019 Secured Convertible Note is unenforceable because either:

    i. Black Swan Technologies, LLC was never a party to the September 25, 2019 Secured Convertible Note;

    ii. The September 25, 2019 Secured Convertible Note did not bind Black Swan Technologies, LLC, in any way;

    iii. Paul Inglese never had an obligation to transfer, assign, or pledge any of his intangible or intellectual property to Black Swan, LLC;

    iv. No consideration was given to Black Swan Technologies to sign or enter into the September 25, 2019 Secured Convertible Note;

    v. There was no collateral to secure the note with because Inglese never assigned or transferred his intellectual property to Black Swan Technologies;

    vi. It is the product of David Tingley, Black Swan Technologies' Chief Financial Officer, breaching his fiduciary duties to Black Swan Technologies by engaging in self-dealing by

encumbering a potential asset of Black Swan Technologies in exchange for nothing so his other company, Galexa, Inc., which he was also the CFO of, would profit and receive a potential asset or a security interest in a potential asset for a huge and inequitable bargain; or because

vii.    It is fraudulent and/or illegal.

C.  Awarding Plaintiff's costs; and

D.  Awarding such other and further relief as this Court deems just and appropriate under the circumstances.

## COUNT TWO - DECLARATORY JUDGMENT

98.     The allegations described in paragraphs 1 through 86(d), above, are hereby reincorporated and realleged herein.

99.     This count sets forth a derivative action against Black Swan Technologies for declaratory relief pursuant to 28 U.S.C. §2201.

100.    Black Swan Technologies is never mentioned within the September 25, 2019 Pledge and Security Agreement.

101.    Black Swan Technologies did not sign the September 25, 2019 Pledge and Security Agreement.

102.    Black Swan Technologies is not a party to the September 25, 2019 Pledge and Security Agreement.

103.   Even if Black Swan Technologies is a party to the September 25, 2019 Pledge and Security Agreement, the September 25, 2019 Pledge and Security Agreement is unenforceable because Black Swan Technologies did not receive any consideration or bargained for exchange in exchange for signing the agreement and encumbering a potential asset.

104.   Even if Black Swan Technologies is a party to the September 25, 2019 Pledge and Security Agreement, the September 25, 2019 Pledge and Security Agreement is void against public policy because David Tingley breached his fiduciary duty to Black Swan Technologies when he encumbered a potential asset of Black Swan Technologies' without receiving anything in return. He did this so his other company, Galexa, which he was also CFO of, could profit and that he could continue to embezzle from Galexa undetected.

105.   Even if Black Swan Technologies is a party to the September 25, 2019 Pledge and Security Agreement, the September 25, 2019 Pledge and Security Agreement is void against public policy because it is fraudulent and illegal.

106.   The parties are in doubt or are uncertain as to the validity and enforceability of the September 25, 2019 Pledge and Security Agreement.

107.   Inglese, on the one hand, and Black Swan Technologies, on the other hand, have, or reasonably may have, a bona fide, actual, present, practical need

for the declaration and they have an adverse and antagonistic interest in the outcome of the declaration, in fact and/or in law.

108.   The declaratory relief sought is not merely the giving of abstract legal advice by the Court or the answer to questions propounded from curiosity.

WHEREFORE, Plaintiff, PAUL INGLESE, prays for declaratory judgment against Defendant, BLACK SWAN TECHNOLOGIES, LLC, ruling that:

A. This Court has jurisdiction over the parties and the subject matter of this action;

B. The September 25, 2019 Secured Convertible Note is unenforceable because either:

   i.   Black Swan Technologies, LLC was never a party to the September 25, 2019 Secured Convertible Note;

   ii.  The September 25, 2019 Secured Convertible Note did not bind Black Swan Technologies, LLC, in any way;

   iii. Paul Inglese never had an obligation to transfer, assign, or pledge any of his intangible or intellectual property to Black Swan, LLC;

   iv.  No consideration was given to Black Swan Technologies to sign or enter into the September 25, 2019 Secured Convertible Note;

v.   There was no collateral to secure the note with because Inglese never assigned or transferred his intellectual property to Black Swan Technologies;

vi.   It is the product of David Tingley, Black Swan Technologies' Chief Financial Officer, breaching his fiduciary duties to Black Swan Technologies by engaging in self-dealing by encumbering a potential asset of Black Swan Technologies in exchange for nothing so his other company, Galexa, Inc., which he was also the CFO of, would profit and receive a potential asset or a security interest in a potential asset for a huge and inequitable bargain; or because

vii.   It is fraudulent and/or illegal.

C.   Awarding Plaintiff's costs; and

D.   Awarding such other and further relief as this Court deems just and appropriate under the circumstances.

## <u>COUNT THREE - DECLARATORY JUDGMENT</u>

109.   The allegations described in paragraphs 1 through 86(d), above, are hereby reincorporated and realleged herein.

110.   This count sets forth a derivative action against Black Swan Technologies for declaratory relief pursuant to 28 U.S.C. §2201.

111.   Inglese never assigned, transferred, or pledged any of his Intellectual Property to Black Swan Technologies.

112.   Black Swan Technologies never owned, held, obtained, or acquired any of Inglese's Intellectual Property.

113.   Black Swan Technologies never had a security interest in any of Inglese's Intellectual Property.

114.   No intangible or intellectual property was ever transferred or assigned to Black Swan Technologies.

115.   Black Swan Technologies never owned, held, obtained, or acquired any intangible or intellectual property.

116.   Black Swan Technologies never had a security interest in any intangible or intellectual property.

117.   The parties are in doubt or are uncertain as to Black Swan Technologies' previous and present ownership of Inglese's intangible and/or intellectual property.

118.   Inglese, on the one hand, and Black Swan Technologies, on the other hand, have, or reasonably may have, a bona fide, actual, present, practical need for the declaration and they have an adverse and antagonistic interest in the outcome of the declaration, in fact and/or in law.

119.   The declaratory relief sought is not merely the giving of abstract legal advice by the Court or the answer to questions propounded from curiosity.

WHEREFORE, Plaintiff, PAUL INGLESE, prays for declaratory judgment against Defendant, BLACK SWAN TECHNOLOGIES, LLC, ruling that:

A. This Court has jurisdiction over the parties and the subject matter of this action;

B. Black Swan Technologies has never owned, held, obtained, or acquired any intangible or intellectual property, or any security interest in any intangible or intellectual property;

C. Alternatively, Black Swan Technologies has never owned, held, obtained, or acquired any of Inglese's intangible or intellectual property, or any security interest in any of Inglese's intangible or intellectual property;

D. Black Swan Technologies never had the ability to pledge, secure, or collateralize any of Inglese's intangible or intellectual property at any time;

E. Black Swan Technologies never enforced the August 5, 2019 Intellectual Property Assignment Agreement against Inglese;

F.   To the extent it could, Black Swan Technologies never assigned anyone its ability to enforce the August 5, 2019 Intellectual Property Assignment Agreement;

G.   There has never been any collateral securing either the September 25, 2019 Secured Convertible Note or the September 25, 2019 Pledge and Security Agreement;

H.   Alternatively, the collateral securing the September 25, 2019 Secured Convertible Note or the September 25, 2019 Pledge and Security Agreement never included any of Inglese's intangible or intellectual property.

I.   Awarding Plaintiff's costs; and

J.   Awarding such other and further relief as this Court deems just and appropriate under the circumstances.

## COUNT FOUR - DECLARATORY JUDGMENT

120.   The allegations described in paragraphs 1 through 86(d), above, are hereby reincorporated and realleged herein.

121.   This count sets forth a derivative action against Black Swan Technologies for declaratory relief pursuant to 28 U.S.C. §2201.

122.   The May 17, 2020 Termination of Intellectual Property Assignment Agreement is a valid and enforceable legal contract.

123.   Chuck Ardezzone, as Black Swan Technologies' CEO, was not under duress or suffering from any diminished capacity when he signed the May 17, 2020 Termination of Intellectual Property Assignment Agreement on behalf of Black Swan Technologies.

124.   Paul Inglese returned 23.75% of his ownership in Galexa, Inc., to Galexa's and Black Swan Technologies' CEO, Ardezzone, in exchange for Galexa and Black Swan Technologies signing and agreeing to the May 17, 2020 Termination of Intellectual Property Assignment Agreement.

125.   At the time, Inglese's 23.75% ownership of Galexa was valued at over half a million dollars.

126.   The parties are in doubt or are uncertain as to the validity or enforceability of the May 17, 2020 Termination of Intellectual Property Assignment Agreement.

127.   Inglese, on the one hand, and Black Swan Technologies, on the other hand, have, or reasonably may have, a bona fide, actual, present, practical need for the declaration and they have an adverse and antagonistic interest in the outcome of the declaration, in fact and/or in law.

128.   The declaratory relief sought is not merely the giving of abstract legal advice by the Court or the answer to questions propounded from curiosity.

WHEREFORE, Plaintiff, PAUL INGLESE, prays for declaratory judgment against Defendant, BLACK SWAN TECHNOLOGIES, LLC, ruling that:

A. This Court has jurisdiction over the parties and the subject matter of this action;

B. The May 17, 2020 Termination of Intellectual Property Assignment Agreement is a valid and enforceable legal contract;

C. Chuck Ardezzone had mental and legal capacity and authority, as Black Swan Technologies' and Galexa's CEO, to sign and enter into the May 17, 2020 Termination of Intellectual Property Assignment Agreement on behalf of Black Swan Technologies and Galexa;

D. Inglese forfeited 23.75% of his Galexa ownership in exchange for Black Swan Technologies and Galexa entering into the May 17, 2020 Termination of Intellectual Property Assignment Agreement;

E. Ardezzone accepted Inglese's 23.75% ownership in Galexa in exchange for signing the May 17, 2020 Termination of Intellectual Property Assignment Agreement;

F. The May 17, 2020 Termination of Intellectual Property Assignment Agreement effectively terminated, cancelled, and rescinded the August 5, 2019 Intellectual Property Assignment Agreement;

G. By signing the May 17, 2020 Termination of Intellectual Property Assignment Agreement, Black Swan Technologies re-assigned and returned any and all of Inglese's intangible or intellectual property it owned or had previously acquired, if any, to Inglese;

H. Black Swan Technologies did not own or possess, and had no right to own or possess, any of Inglese's intangible or intellectual property after it signed the May 17, 2020 Termination of Intellectual Property Assignment Agreement;

I. Awarding Plaintiff's costs; and

J. Awarding such other and further relief as this Court deems just and appropriate under the circumstances.

## VERIFICATION

**I verify under penalty of perjury that the foregoing is true and correct.**

Executed on November _3_, 2021.

Paul A. Inglese

BOATMAN RICCI

 s/ Joseph M. Coleman
Ernest A. Ricci, Esq.
Fla. Bar No. 100584
Joseph M. Coleman, Esq.
Fla. Bar No. 119110
3021 Airport-Pulling Rd. N., Suite 202
Naples, Florida 34105
Primary Email:
CourtFilings@boatmanricci.com
(239) 330-1494 – Telephone
Attorneys for Plaintiff

29